CUMMINGS *v.* CONTINENTAL MACHINE
TOOL CORPORATION.

1. BILLS AND NOTES—BURDEN OF SHOWING VALUE RECEIVED.
   The promisee must establish that the promisor received value for
   his promise to pay in order that the promisee recover on a
   promissory note.

2. SAME—FAILURE OF CONSIDERATION—MORTGAGES.
   Plaintiff promisee in promissory note sued on *held,* to have failed
   to sustain his burden of proof that defendant promisor re-
   ceived value for his promise to pay note, given for assignment
   of promisee's interest in leasehold of gravel pit, under evidence
   presented in suit on note and to foreclose collateral mortgage,
   hence, no cause of action is decreed on the note for failure of
   consideration, and mortgage was likewise unenforceable.

Appeal from Genesee; Baker (John W.), J. Sub-
mitted June 5, 1963. (Calendar No. 17, Docket No.
49,568.) Decided September 4, 1963.

Bill by Leo A. Cummings against Continental
Machine Tool Corporation, a Michigan corporation,
Paul Eghigian and Rose Eghigian to foreclose mort-
gage. Cross-bill to cancel note and mortgage.
Decree for defendants. Plaintiff appeals. Affirmed.

*Sherman M. Bean,* for plaintiff.

*Foster, Campbell, Lindemer & McGurrin (Richard
B. Foster, Jr.,* and *Edmund E. Shepherd,* of counsel),
for defendants.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 7, 8 Am Jur, Bills and Notes §§ 249, 1005–1008.

KELLY, J. Plaintiff sought recovery on a promissory note and foreclosure of a collateral mortgage. The lower court adjudged that "the consideration for which said note was given failed and is therefore of no force or effect," and decreed the mortgage be discharged.

Plaintiff appeals, presenting 1 question, namely: "Was there a failure of consideration moving from the plaintiff to the defendant Continental Machine Tool Corporation in the agreement of February 6, 1958?"

March 1, 1957, D. W. Swartwout leased a gravel pit located in Genesee county and continued operating said pit until January 22, 1958, when he assigned his leasehold interest, together with all his business assets, to plaintiff Cummings and defendant Continental Machine Tool Corporation, each an undivided 1/2.

Fifteen days later, on February 6, 1958, plaintiff assigned to defendants all the interest he acquired in the January 22, 1958, assignment from Swartwout, including accounts receivable, physical assets, and, specifically, all plaintiff's interest in Swartwout's March 1, 1957, gravel pit lease, and defendant corporation gave its note for $10,000, payable to plaintiff, "with interest at the rate of 6% per annum after date, payable in principal monthly instalments of $2,500, commencing May 15, 1958, according to a real-estate mortgage, by which this note is secured."

Defendant Paul Eghigian is president of defendant corporation and his wife, Rose Eghigian, is secretary-treasurer. On March 29, 1958, defendant Paul Eghigian executed a deed to his wife, defendant Rose Eghigian. July 23, 1958, plaintiff filed his bill of complaint for foreclosure of the mortgage, alleging defaults in the payment of the note and stating that defendant Paul Eghigian's deed to his wife

was without consideration and "for the sole purpose of casting doubt upon plaintiff's mortgage."

Defendants filed answer and cross-bill of complaint alleging that plaintiff and Swartwout had "each of them represented that a great deal of money could be made operating the pit and that the lease was worth at least $25,000"; that after defendants had executed the note and mortgage and took over the gravel pit they ascertained that the lease had been cancelled in December, 1957, and, also, that the stockpiles of material on the leased premises that had been represented as available to defendants "were in fact already sold and were not available to defendants for income"; that in the course of operating the pit defendants lost $18,071.43, "largely because their free use of the gravel pit was inhibited." Defendants prayed that plaintiff's bill of complaint be dismissed, the note and mortgage declared null and void, and plaintiff "be required to account to these defendants in damages in the amount of $20,000."

At the pretrial hearing, defendants abandoned any attempt to establish the validity of the deed, and the issues were limited and tried to 2 questions: (1) Fraud on the part of plaintiff; and (2) Failure of the consideration of the February 6, 1958, agreement between plaintiff and defendant corporation.

The court by its decree decided: (a) No fraud on the part of plaintiff; and (b) There was a failure of consideration moving to defendant corporation. It is from this decree that plaintiff appeals.

Plaintiff testified he had known Mr. Swartwout for over 30 years and that on other occasions Swartwout had borrowed money from him but he wouldn't attempt to try to say accurately how many times Swartwout had borrowed money; that to help Swartwout out in his gravel pit operations, which is the basis of this suit, he made 8 different loans to him,

in 1957, as follows: July 4th, $1,000; July 27th, $800; August 2d, $800; August 5th, $100; August 9th, $1,000; August 14th, $1,400; October 3d, $900; and October 12th, $950.

Plaintiff further testified that after there was a balance of $4,600 of his own funds still owing, he went to the bank and signed a note which had a limit up to $50,000; that thereafter the bank advanced the following amounts to meet Swartwout's payroll and expenses:

"On August 16, 1957, there was—there was $6,-405.92 advanced. And August 19th there was $1,462.50 advanced. August 23d, 1957, there's $2,533.23 advanced. August 13th, there was $1,-956.49 advanced. September 5, 1957, there was $2,015.61 advanced. September 6, 1957, there was $458.26 advanced. That—at that time there was a total balance of $14,832.01."

Howard Cline, a practicing attorney in the city of Flint, testified that he represented the owners of the gravel pit and in December, 1957, by letter, notified Swartwout he was confirming the previous oral notices and that the owners were canceling all of Swartwout's rights in the lease because of Swartwout's default in the terms; that the owners were taking possession of the premises, and that Swartwout was not to remove any further gravel. He further testified that he received a telephone call on January 20, 1958, and that "the caller stated his name was Leo Cummings (plaintiff), and insisted that something be done at once in connection with this gravel pit matter."

This January 20, 1958, telephone call, which attorney Cline refers to, was 2 days previous to the assignment by Swartwout to defendants and plaintiff and over 2 weeks before the February 6th assignment by plaintiff to defendants.

There follows part of plaintiff's testimony on cross examination:

"*Q.* You sold him (Eghigian) a half interest in the gravel pit, didn't you?

"*A.* I sold him all my interest in everything.

"*Q.* And didn't that consist of half interest in the lease? Didn't that consist of a half interest in the Genesee county road commission contract?

"*A.* Whatever interest I had, it consisted of all of it.

"*Q.* Didn't that consist of some stock piles of gravel that were there?

"*A.* There may have been gravel there, maybe there wasn't. I don't know.

"*Q.* Didn't that consist of some accounts receivable?

"*A.* Oh, yes.

"*Q.* The agreement states that it did.

"*A.* That's right.

"*Q.* It says gravel and accounts receivables.

"*A.* It did. And after it was signed he got the money. It was given to him.

"*Q.* In other words, your interest in the gravel pit was a lease interest?

"*A.* Any interest.

"*Q.* Some stock piles, some accounts receivable, and the Genesee county contract, wasn't it? Isn't that what you owned?

"*A.* That was what it was represented to be, as I understand it."

The following statement of appellees is sustained by this record:

"The assignment of February 6, 1958, was accepted by defendant on the assumption that certain subjects-matter of the agreement actually existed, (1) the lease to the Montrose (Swartwout) gravel pit, *sine quo non,* (2) a valid, standing order from the Genesee county road commission for 150,000 tons of gravel, (3) stockpiles of gravel at the pit, owned

by Montrose, and (4) Montrose 'accounts receivable,' possessing value. Unfortunately, none of these facts was precisely true.

"1. The vital, all-important lease to the gravel pit, without which Continental could not hope to carry on the Montrose business with any degree of success, had been revoked on December 26, 1957, on the ground, among others, that the pit had not been properly operated by the tenant, Montrose, and it was later terminated by court order after Paul Eghigian, president of Continental, had made honest effort to validate it through litigation. Moreover, while he did produce 15,000 cubic yards of gravel which he sold at .65 cents [65¢] per yard, this was more than offset by great expense to which he had been put, and his attempts to operate the gravel pit were frustrated again and again by the lessors who, among other things, placed a chain across the entrance. We respectfully submit that this alone constituted a failure of consideration for defendant's note.

"2. The order of the Genesee county road commissioners for 150,000 tons of gravel, was canceled by a resolution adopted by the commissioners on February 11, 1958, due to the fact that as early as September, 1957, Montrose (Swartwout) had failed to meet requirements of the specifications; production of stockpiling of gravel in 1957, was ignored, at considerable loss to the commission, due to the fact that contemplated road improvements could not be performed without the gravel which Swartwout had contracted to deliver.

"3. Montrose (Swartwout), it developed, had no title to stockpiles at the pit; 23,673 tons of such gravel had been mined by Walter F. Hutfilz. Paul Eghigian, president of Continental, was shown 2 piles of gravel at the pit which Hutfilz was going to take and pay him, Eghigian, but he did not do so. During 1958, Hutfilz came and took the gravel but, instead of paying Eghigian for it, he sent him a bill

for $1,582.22 which Hutfilz had overpaid Swartwout for the gravel.

"4. Finally, and briefly, the Montrose 'accounts receivable' proved worthless and uncollectible."

Appellees do not appeal from the court's decision that there was no fraud on the part of plaintiff and it is not, therefore, necessary in this opinion for us to pass judgment upon that portion of the lower court's finding.

We do, however, agree with the trial court's conclusion that "there is no showing that any of the supposed assets of the Montrose Gravel Company were of any value. Thus, when plaintiff Cummings, on February 6, 1958, made his assignment to the defendant corporation there was still nothing of value which was transferred. * * * As between the parties, the promisee must establish that the promisor received value for his promise to pay. In this instance, the plaintiff has not sustained the burden, and defendant has established that he received nothing for his promise to pay. Decree may be entered on behalf of the defendants, no cause of action. The note being unenforceable, it follows that the claimed mortgage must likewise fail."

Affirmed. Costs to appellees.

CARR, C. J., and DETHMERS, BLACK, KAVANAGH, SOURIS, SMITH, and O'HARA, JJ., concurred.